IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ST. LUKE'S HEALTH NETWORK, INC. d/b/a ST. LUKE'S UNIVERSITY HEALTH NETWORK, *et al.*, | |
| Plaintiffs, | CIVIL ACTION NO. 18-2157 |
| v. | |
| LANCASTER GENERAL HOSPITAL, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**SCHMEHL, J. /s/ JLS**                                                                 **September 12, 2024**

I

Presently before the Court is Defendants' motion for summary judgment on the remaining counts of Plaintiffs' amended complaint.[1] The motion asks the Court to enter judgment on these state-law counts because: (1) a state statute preempts them, and (2) they otherwise fail for insufficient evidence. As set forth below, the Court grants the motion in part and denies the motion in part.

II

Plaintiffs, a group of hospitals and their related healthcare network, allege that from 2010 to 2012 Defendant Lancaster General Hospital, and its related hospital system, participated in a "scheme" to submit "invalid and overstated claims" to Pennsylvania's Hospital Extraordinary Expense Program ("EE Program"). 35 Pa. Stat. §§ 5701.1101-

---

[1] Since briefing, the parties consensually dismissed counts one and two. Stip. Dismissal, ECF No. 88. As those counts no longer remain, the Court denies the Defendants' motion for summary judgment on counts one and two.

.1108 (2001).  The EE Program reimburses hospitals for extraordinary expenses incurred while treating uninsured patients.  § 5701.1105(a); *see generally St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 297-98 (3d Cir. 2020).  Claims are paid *pro rata*, based on each hospital's proportionate share of claimed expenses for each fiscal year.  § 5701.1105(d).

As amended, the complaint alleges that Defendants' "improper" claims unjustly decreased the amount of money available to other participating hospitals.  Since the Commonwealth—acting through the Department of Human Services ("DHS")—declined to "claw back" those payments, Plaintiffs now seek relief through this private civil action.  They sue on behalf of all hospitals "underpaid" during fiscal years 2010-2012 and assert claims of (1) unjust enrichment, (2) money had and received, and (3) "constructive trust" under Pennsylvania law.

### III

Defendants move for summary judgment on all remaining counts.  Federal Rule of Civil Procedure 56 governs motions for summary judgment.  The Rule provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*  Since that burden rests with the movant, the Court construes the evidence in the light most favorable to the party opposing the motion.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  If the movant carries their initial burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific, material facts that present "a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015).  A fact is "material" under Rule 56 if its existence or nonexistence might impact the

outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

IV

A

Defendants first attack all counts under a theory of statutory preemption. They rely on § 1504 of the Statutory Construction Act of 1972, which provides:

> In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect.

1 Pa. Cons. Stat. § 1504 (1972). Defendants reason that because the statute authorizing the EE Program—the Tobacco Settlement Act ("TSA")—"clearly provides statutory remedies" Plaintiffs' common-law claims are preempted. By "remedies," Defendants refer DHS's authority to assess an administrative penalty for hospitals that "negligently violat[e]" the requirements of 35 Pa. Stat. §§ 5701.1101-.1108. (2001). *See* § 5701.1108(b).[2]

After reviewing the parties' submissions, the Court concludes that § 1504 does not apply. Pennsylvania courts construe § 1504 as requiring "a party to strictly follow a statutory remedy, when one is provided, to the exclusion of a common law claim." *White v. Conestoga Title Ins. Co.*, 53 A.3d 720, 731 (Pa. 2012). But where a "statutory procedure [does] not contemplate the grievance in question," § 1504 does not apply. *Id.* at 732; *see*

---

[2]    Defendants also collaterally point out that because DHS does not interpret the TSA as allowing it to "claw back" improper payments, this Court ought to defer to that interpretation. *See* Defs.' Mot. Summ. J. Ex. 2 at 29., ECF No. 80.

*also Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 660 (Pa. 2009); *Feingold v. Bell of Pennsylvania*, 383 A.2d 791, 793 (Pa. 1977).

Here, the administrative-penalty scheme of § 5701.1108(b) contemplates an adversarial agency proceeding between DHS and a hospital. It does not provide an opportunity for these Plaintiffs to address their current grievance—namely, that the Defendants have retained EE Program payments that were wrongly paid to them and should have been paid to the Plaintiffs. Defendants concede as much. *See* Mem. Supp. Defs.' Mot. Summ. J. at 35, ECF No. 81 ("[T]he TSA is silent as to any process or procedure for reconciliation of payments."). The asserted "statutory remedy" is therefore inadequate. Section 1504 of the Statutory Construction Act of 1972 does not apply.

B

Defendants next argue that the Plaintiffs failed to produce evidence sufficient to support finding of unjust enrichment. Specifically, Defendants assert that no evidence exists showing that Plaintiffs directly conferred a benefit on Defendants. *Id.* at 36-38. They point out that the EE Program money flowed from DHS to Defendants, not from Plaintiffs to Defendants.

In response, Plaintiffs assert that Pennsylvania law does not require that the plaintiff directly confer a "benefit" on the defendant. Plaintiffs suggest that a party can sustain its burden of production by merely showing that the defendant received some benefit, such as "where a defendant's interaction with a governmental unit results in the defendant wrongfully obtaining a governmental benefit which would otherwise have flowed to the plaintiff." Pls.' Br. Opp. Defs.' Mot. Summ. J. at 10, ECF No. 84. For this proposition, Plaintiffs cite to two federal district court opinions, and one 1936 opinion from the

4

Pennsylvania Supreme Court. *Nat'l Paragon Corp. v. Aberman*, No. 87-4454, 1987 WL 30128, at *1 (E.D. Pa. Dec. 23, 1987); *Bradney v. QR Sys. N., Inc.*, No. 86-4022, 1986 WL 12944, at *5 (E.D. Pa. Nov. 17, 1986); *Caskie v. Philadelphia Rapid Transit Co.*, 184 A. 17, 20 (Pa. 1936).

After reviewing those decisions, the Court concludes that it is bound by more recent precedent from the Court of the Appeals for the Third Circuit. Specifically, the Third Circuit articulates the elements of unjust enrichment as "(1) a benefit conferred *on the defendant by the plaintiff*; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (citing *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001)) (emphasis added). This definition comports with the current state of Pennsylvania law. *See, e.g.*, *WFIC, LLC v. LaBarre*, 148 A.3d 812, 819 (Pa. Super Ct. 2016) (quoting *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993)). To survive summary judgment, Plaintiffs must therefore offer some evidence showing that they—not an independent third party—conferred a benefit on Defendants. Plaintiffs point to none. The Court will therefore enter judgment as a matter of law on count three of the amended complaint.

C

Turning to count four, Defendants mount a similar attack. They contend that no evidence supports Plaintiffs' money-had-and-received claim. Specifically, Defendants maintain that Plaintiffs must offer evidence that shows that the Defendants received the EE Program overpayments "'by mistake or under compulsion.'" Defs.' Mem. Supp. Summ.

5

J. at 38, ECF No. 81 (quoting *Cohen v. Chicago Title Ins. Co.*, 242 F.R.D. 295, 299 (E.D. Pa 2007)).

Plaintiffs disagree with this evidentiary requirement. They respond that a money-had-and-received claim does not necessarily require proof of "mistake or compulsion." Rather, Plaintiffs suggest that the cause of action is "more general and flexible," accruing where "'one has in his hands money which in equity and good conscience belongs and ought to be paid to another.'" Pls.' Br. Opp. Defs.' Mot. Summ. J. at 16-18, ECF No. 84 (quoting *Hughey v. Robert Beech Assocs.* A.2d 425,427 (Pa. Super. Ct. 1977)).

After reviewing the submissions, the Court agrees with the Plaintiffs' explanation of Pennsylvania law. The money-had-and-received cause of action is clearly not as narrow as Defendants suggest. Though mistake or compulsion may give rise to such a claim, such evidence is not a *sine qua non*. Rather, Pennsylvania courts articulate the cause of action more broadly, arising where the defendant "received money or property which he is not entitled to keep and which in equity and good conscience should be paid to plaintiff in accordance with principles of natural justice." *Hughey*, 378 A.2d at 427; *see also First Nat'l Bank v. Carroll Tp.*, 27 A.2d 527, 529-30 (Pa. Super. Ct. 1942). And, notably, "it makes no difference that it is from someone other than the plaintiff that the defendant received the money." *Hughey*, 378 A.2d at 427

Against that standard, the record contains evidence sufficient to survive summary judgment. The evidence tends to show that Defendants submitted numerous claims to the EE Program. Pls.' Br. Opp. Defs.' Mot. Summ. J. at 4-6, ECF No. 84. Some of those claims appear ineligible for EE Program reimbursement. *Id.* Payment of these claims also appears to have deprived Plaintiffs of money that would have otherwise flowed to them.

*Id.* A trial must therefore resolve Defendants entitlement to these payments and the nature of any equitable remedy adjudged. Accordingly, summary judgment is denied as to count four.

D

Finally, Defendants ask the Court to enter judgment on count five, which requests establishment of a constructive trust. Without addressing the parties' arguments, the Court notes that Pennsylvania does not recognize a separate cause of action for "constructive trust." Rather, Pennsylvania recognizes a constructive trust as an equitable remedy. *See Buchanan v. Brentwood Fed. Sav. and Loan Ass'n*, 320 A.2d 117, 126 (Pa. 1974) (deeming a constructive trust an equitable remedy); *Brock & Co., Inc. v. Kings Row Assocs.*, No. 04-2096, 2004 WL 2624864, at *5 (E.D. Pa. Nov. 17, 2004) (noting that "a constructive trust is an equitable remedy and not a separate, specific cause of action"). As Plaintiffs already request a constructive trust in their prayer for relief, Plaintiffs' claim for constructive trust is redundant. Instead of granting the motion for summary judgment as to count five, the Court will exercise its discretion under Federal Rule of Civil Procedure 12(f)(1) and strike count five from the amended complaint.

IV

For the foregoing reasons, and as set forth in the accompanying order, the Defendants' motion is granted with respect to count three of the amended complaint and denied as to counts one, two, four, and five. Count five will be stricken from the complaint pursuant to Federal Rule of Civil Procedure 12(f)(1).